IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| MICHAEL SHEPPARD,<br>          *Plaintiff,*<br><br>v.<br><br>BAC HOME LOANS SERVICING, LP F/K/A COUNTRYWIDE HOME LOANS SERVICING LP, ET AL.,<br>          *Defendants.* | CASE NO. 3:11-cv-00062<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

   This matter is before the Court upon consideration of Plaintiff's motion to remand, which was filed on October 21, 2011 (docket no. 9). Certain Defendants previously filed a notice of removal based on diversity jurisdiction on September 23, 2011 (docket no. 1). Plaintiff now seeks to have his case remanded to the Circuit Court for the County of Culpeper. For the reasons that follow, I will deny Plaintiff's motion.

**I. Background**

   Plaintiff Michael Sheppard ("Plaintiff") filed a complaint in the Circuit Court for the County of Culpeper on August 18, 2011, against Defendants BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing LP ("BAC"),[1] Professional Foreclosure Corporation of Virginia ("PFC"), Federal National Mortgage Association ("Fannie Mae"), and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively, "Defendants"). The factual allegations of the complaint, which at this stage the Court must accept as true, are as follows.

---

[1] On July 1, 2011, BAC Home Loans Servicing, LP merged into Bank of America, N.A. ("Bank of America") and lost any separate identity.

On or about August 26, 2006, Plaintiff executed a promissory note and a deed of trust as security interest in property located in Culpeper, Virginia. According to the complaint, the promissory note in the amount of $242,165.00[2] names Countrywide Home Loans, Inc. ("Countrywide") as the lender and defines the "Note Holder" as "anyone who takes this Note by transfer and who is entitled to receive payments under the Note." Compl. Ex. B at ¶ 1. Additionally, the deed of trust names Countrywide as the lender, MERS as the beneficiary, and Samuel I. White, P.C. ("White") as the trustee. The deed of trust provides that MERS "is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns." Compl. Ex. A at 2.[3]

After defaulting on his loan obligations, Plaintiff alleges that on September 23, 2010, in a document entitled "Assignment," MERS assigned to BAC "all right, title, and interest in [the deed of trust]." Compl. Ex. D. The Assignment was executed by Shanna Simmons ("Ms. Simmons") as assistant secretary for MERS. On the same day, in a document entitled "Appointment of Substitute Trustees," BAC, identifying itself as "the present holder or authorized agent of the holder of the Note," appointed PFC as substitute trustee in place of the original trustee, White. Compl. Ex. C. The Appointment of Substitute Trustees was executed by Ms. Simmons as attorney-in-fact for BAC. Plaintiff alleges that Ms. Simmons is the foreclosure operations manager at PFC. As such, Plaintiff asserts that Ms. Simmons had no power of

---

[2] The actual note, which Plaintiff attaches to his complaint as Exhibit B, lists the amount borrowed as $268,000.00. Compl. Ex. B at ¶ 1.

[3] In one multidistrict litigation case, the court described the MERS systems as follows:
> Under the MERS system, at the origination of a residential loan, the lender takes possession of a promissory note and the borrower and lender agree to designate MERS as the beneficiary under a deed of trust. Under the MERS system, the rights to the mortgage are tracked in an internal electronic database and not recorded in the public records each time the rights to the mortgage are bought and sold, so long as the buyer is a member of the MERS system

*In re Mortgage Elec. Registration Sys. (MERS) Litig.*, MDL No. 09-2119, 2011 WL 4550189, at *3 (D. Ariz. Oct. 3, 2011). This system has been integral to the securitization of mortgages, a practice that homeowners and the courts have become well aware of in recent years.

attorney to act on behalf of BAC and that PFC effectively appointed itself as substitute trustee, thus rendering the Appointment of Substitute Trustees void. Alternatively, Plaintiff alleges that the Appointment of Substitute Trustees is void because BAC was not the holder of the monetary obligations due under the loan and had no interest in the note.

Additionally, Plaintiff alleges that the assignment of the deed of trust is void because Ms. Simmons was not employed by MERS, the entity that executed the Assignment. More fundamentally, Plaintiff alleges that MERS had no authority to assign its rights under the deed of trust because such was not "necessary to comply with law or custom." Compl. ¶ 22. Plaintiff also claims that BAC is not a holder in due course, the proper noteholder, or an assignee of the lender. In that vein, Plaintiff asserts that PFC scheduled a foreclosure sale of his property without performing any due diligence to ensure that "the entity invoking the power of sale under the Deed of Trust and VA Code 55-59 actually had the authority to do so." Compl. ¶ 23. As such, Plaintiff maintains that PFC breached a fiduciary duty owed to him. According to Plaintiff, on or about May 18, 2011, Fannie Mae purchased the property for $280,496.73. On June 7, 2011, PFC executed a trustee's deed, conveying the property to Fannie Mae.

All told, Plaintiff has brought three state-law claims against Defendants. In Count I, asserted against all Defendants, Plaintiff brings a quiet title action in which he seeks an order declaring the Assignment and the Appointment of Trustees void and striking them from the land records. In addition, Plaintiff requests that injunctive relief be granted in order to stay any unlawful detainer proceedings "until this Court is satisfied that the proper party declared a default, removed/appointed substitute trustees, accelerated the Note, and invoked the power of sale." Compl. ¶ 34.

In Count II, asserted against PFC, Plaintiff alleges that PFC breached its fiduciary duty to

Plaintiff by appointing itself as substitute trustee, initiating foreclosure proceedings, and selling Plaintiff's property. Plaintiff seeks $100,000 in damages from PFC for his financial losses.

In Count III, asserted against PFC and BAC, Plaintiff raises a claim for wrongful foreclosure on the basis of the alleged invalidity of BAC's appointment of PFC as substitute trustee. The actions of BAC and PFC, according to Plaintiff, amount to the "theft of Plaintiff's home." Compl. ¶ 48. In Count III, Plaintiff seeks an order (1) rescinding the foreclosure sale conducted by PFC and (2) awarding him $250,000 in damages.

On September 23, 2011, Bank of America (successor by merger to BAC) and Fannie Mae jointly filed a notice of removal to this Court, asserting that the Court has diversity jurisdiction over Plaintiff's action against Defendants. Bank of America and Fannie Mae contend in their notice of removal that the citizenship of MERS and PFC should not be considered for the purposes of testing diversity jurisdiction because those entities were fraudulently joined or, alternatively, because they are nominal parties. Neither MERS nor PFC has filed a notice of removal or joined in the notice filed by Bank of America and Fannie Mae. Presently before the Court is Plaintiff's motion to remand. In it, Plaintiff argues that MERS and PFC are citizens of Virginia and legitimate parties, that the Court lacks subject matter jurisdiction to hear the case, and that removal was improper.

## II. Legal Standards

### A. Removal Jurisdiction

As a general matter, "the defendant or the defendants" may seek to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). To invoke federal jurisdiction, the defendant seeking

removal must, within thirty days after the receipt of a copy of the initial pleading setting forth the claim for relief upon which the action is based, file with the appropriate federal district court a notice of removal stating the grounds for removal. 28 U.S.C. § 1446(a)–(b). Of course, non-removing parties are entitled to oppose removal by seeking remand to state court. As one court has noted, "[t]he right to remand and the right to remove are of equal import: while certain plaintiffs pleading claims based on state law are entitled to air their grievances before a state tribunal, certain defendants are equally entitled to mount their defense in a federal forum." *17th St. Assocs., LLP v. Markel Int'l Ins. Co.*, 373 F. Supp. 2d 584, 594 (E.D. Va. 2005).

With that being said, I observe the central truth that "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). "Removal statutes, in particular, must be strictly construed, inasmuch as the removal of cases from state to federal court raises significant federalism concerns." *Barbour v. Int'l Union*, 640 F.3d 599, 605 (4th Cir. 2011) (en banc). Any doubts concerning removal of a case from state court should be resolved in favor of state-court jurisdiction. *Id.* at 613. Ultimately, "[t]he burden of establishing federal jurisdiction is placed upon the party seeking removal." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).

### B. Diversity Jurisdiction

Federal district courts have original jurisdiction over, *inter alia*, all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and where the case is between citizens of different states. 28 U.S.C. § 1332(a). "In order to establish diversity jurisdiction, the parties must be completely diverse; none of the plaintiffs may share citizenship

5

with any of the defendants." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 2004). In the instant case, there is no dispute that the amount in controversy requirement is satisfied. Further, it is undisputed that Plaintiff is a citizen of Virginia. Bank of America, the successor by merger to BAC, has its main office in North Carolina, and is therefore a citizen of that state. *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006) (holding that, for the purposes of diversity jurisdiction, a national bank is a citizen of the state wherein its main office is located as set forth in its articles of association). Fannie Mae is a citizen of the District of Columbia. *See* 12 U.S.C. § 1717(a)(2)(B) ("[Fannie Mae] shall maintain its principal office in the District of Columbia or the metropolitan area thereof and shall be deemed, for purposes of jurisdiction and venue in civil actions, to be a District of Columbia corporation.").[4] Plaintiff alleges that MERS is a Delaware corporation that has its principal place of business in Virginia, and Defendants do not argue to the contrary.[5] Thus, the Virginia citizenship of MERS, if counted, would preclude federal court jurisdiction in this case. Plaintiff further alleges that PFC is a Virginia corporation with its principal place of business in Virginia, and again, Defendants do not dispute this assertion. Therefore, the Virginia citizenship of PFC, if counted, would similarly bar federal court jurisdiction over this case.

### C. The Fraudulent Joinder Doctrine

"Fraudulent joinder" is a judicially created doctrine and a term of art; "'it does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or *in fact* no cause of action

---

[4] In his complaint, Plaintiff insinuates that Fannie Mae is a citizen of Virginia; however, he concedes in the brief accompanying his motion to remand that Fannie Mae is indeed a citizen of the District of Columbia.

[5] The federal diversity jurisdiction statute provides that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The phrase "principal place of business" refers to "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," often described as the corporation's "nerve center." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1186 (2010).

exists.'" *AIDS Counseling and Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990) (quoting *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979)). Fraudulent joinder provides an exception to the requirement of complete diversity. *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999); *see also 17th St. Assocs.*, 373 F. Supp. 2d at 595 ("The 'fraudulent joinder' doctrine permits the exercise of jurisdiction where the citizenship of the parties dictates otherwise."). In order to establish that a nondiverse defendant has been fraudulently joined, "the removing party must establish either: '[T]hat there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [T]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts.'" *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)).

To be sure, "[t]he burden on the defendant claiming fraudulent joinder is heavy: the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor." *Id.* at 232–33. This standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999). Thus, in order to invoke the fraudulent joinder doctrine, it has been said that a defendant must "negate all possibility of recovery." *Id.* at 425. However, this "no possibility" standard is not to be applied rigidly. *See Linnin v. Michielsens*, 372 F. Supp. 2d 811, 819 (E.D. Va. 2005) ("[T]he 'no possibility' standard cannot possibly be taken literally or applied mechanically."). Instead, the court should ascertain "whether there is a reasonable basis for predicting liability based on the claims alleged." *Id.* (citation and quotation marks omitted); *see also Smallwood v. Ill. Cen. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (stating that the test for

fraudulent joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant"). In determining whether an attempted joinder is fraudulent, "the court is not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.'" *AIDS Counseling*, 903 F.2d at 1004 (quoting *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964)).

### III. Discussion

#### A. MERS is a Fraudulently Joined Defendant

At the outset, I note that MERS is only named as a Defendant in Count I of the complaint, Plaintiff's quiet title claim. In that count, the only discernable claim against MERS made by Plaintiff is that MERS lacked authority to assign its rights under the deed of trust to BAC, and therefore that the Assignment is invalid. And yet an action to quiet title "is based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims against that title." *Maine v. Adams*, 277 Va. 230, 238, 672 S.E.2d 862, 866 (Va. 2009). Thus, in such an action, the plaintiff endeavors to compel "any adverse claimant to prove a competing ownership claim or forever be barred from asserting it." *Id.* Here, though, MERS, which has not joined Defendants' notice of removal, makes no claim to superior title. Indeed, MERS could not; as beneficiary under the deed of trust, MERS possessed only legal title and had no beneficial interest in the note that the deed of trust secured. Thus, I find that there is no reasonable basis to believe that Plaintiff can prevail against MERS in this regard. This conclusion is further buttressed by an examination of both the terms of the deed

8

of trust and relevant case law.

The first, second, and third pages of the deed of trust clearly identify MERS's two roles: it is named as beneficiary (along with its successors and assigns) and nominee for the lender (and the lender's successors and assigns). On page three, the deed of trust further states that MERS

> holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Compl. Ex. A at 3. At bottom, the deed of trust is a contract, which Plaintiff signed. *See* Va. Code § 55-59 ("Every deed of trust to secure debts . . . is in the nature of a contract and shall be construed according to its terms to the extent not in conflict with the requirements of law."). There is nothing in the language of the deed of trust which serves to prohibit MERS from assigning its rights. *See Johnson v. Ferris*, No. 188047, 2001 WL 1829719, at *4 (Va. Cir. Ct. May 31, 2001) ("The general rule of interpretation is that in the absence of an express provision *against* assignment of a contract not involving personal skill, trust, or confidence, the contract is freely assignable."). Indeed, as mentioned, the deed of trust explicitly states on page three that the beneficiary is MERS "and the successors and *assigns* of MERS." Compl. Ex. A at 3 (emphasis added).[6]

In *Portillo v. Mortgage Elec. Registration Sys., Inc.*, No. CL-2011-3457, at 1 (Fairfax County Va. Cir. Ct. Aug. 9, 2011), the court explicitly stated that "[b]y signing the Deed of

---

[6] In his complaint, Plaintiff alleges that MERS had no authority to assign to BAC its rights under the deed of trust because such was not "necessary to comply with law or custom." Compl. ¶ 22. In other words, Plaintiff contends that MERS can act on behalf of the lender *only* when necessary to comply with law or custom. Not only does this assertion have no sound basis in the language of the deed of trust, but it has also been rejected by other courts examining the same argument. *See, e.g.*, *Ruiz v. Samuel I. White, P.C.*, No. 1:09-cv-688, 2009 WL 4823933, at *1 (E.D. Va. Dec. 11, 2009) ("The 'if necessary to comply with law or custom' language does not, as plaintiff's counsel asserts, require that the nominee have the power to act only when directed by law; rather, the nominee may act on behalf of the Lender as authorized by the deed of trust. It is this document that explicitly defines the nominee's powers . . . and is binding on the parties under Virginia contract law.").

9

Trust, [plaintiff borrower] agreed that MERS could assign its rights or take any action required of lender." *Accord Moore v. BAC Home Loans Servicing LP*, No. CL-10-5348, at 3 (Prince William County Va. Cir. Ct. Jan. 3, 2011) (finding, in the course of sustaining MERS's demurrer, that the deed of trust supplied MERS with authority to execute an assignment). And in *Graves v. Mortgage Elec. Registration Sys., Inc.*, No. CL-2010-17101, 2011 Va. Cir. LEXIS 97, at *8 (Va. Cir. Ct. June 29, 2011), in which the court considered the distinct yet related issue of whether MERS has authority to appoint substitute trustees, the court sustained MERS's demurrer and stated that deeds of trust "are treated as contracts, and nothing under Virginia law appears to prohibit a lender and borrower from agreeing to allow a third party, such as MERS, to enforce the terms of a deed of trust." Thus, the Assignment executed by MERS in which it conferred its rights under the deed of trust to BAC is not unlawful and was permitted by the terms of the deed of trust, which, I note again, Plaintiff signed. Moreover, several different courts recently tasked with assessing the validity of similar assignments have concluded that MERS has the right to assign its rights under mortgages or deeds of trust. *See, e.g.*, *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1042 (9th Cir. 2011); *Bhatti v. Guild Mortgage Co.*, No. C11-0480, 2011 WL 6300229, at *4–5 (W.D. Wash. Dec. 16, 2011); *Zinni v. Mortgage Elec. Registration Sys., Inc.*, No. 2:11-CV-1539, 2011 WL 5827197, at *2 (D. Nev. Nov. 18, 2011); *Velasco v. Security Nat'l Mortgage Co.*, CV. No. 10-00238, 2011 WL 4899935, at *5 (D. Haw. Oct. 14, 2011); *White v. BAC Home Loans Servicing, L.P.*, No. 4:10-CV-2094, 2011WL 1483901, at *6 (E.D. Mo. Apr. 19, 2011). Within this circuit, the district court came to the same conclusion in the factually similar case of *Larota-Florez v. Goldman Sachs Mortgage Co.*, 719 F. Supp. 2d 636 (E.D. Va. 2010), *aff'd*, 2011 WL 3203047 (4th Cir. July 28, 2011). In *Larota-Florez*, the court held that a similarly formulated deed of trust "expressly confers authority on MERS and its

successors and assigns to foreclose on the Property upon Plaintiff's default" and that MERS's assignee was entitled to appoint a substitute trustee. *Id.* at 639–40.[7]

Quite recently, Judge Leonie Brinkema in the Eastern District of Virginia heard a very similar motion to remand in *Munoz v. BAC Home Servicing, LP*, No. 1:11-cv-00582 (E.D. Va. July 15, 2011). In her bench ruling denying the plaintiffs' motion to remand, Judge Brinkema stated during the hearing:

> [Q]uite clearly . . . [the substitute trustee and MERS] are essentially fraudulently joined to destroy diversity jurisdiction . . . if you look at the case law that's been established in the Fourth Circuit as well as . . . the cases that are coming out of the state courts, the two parties whom you have named in this case that would destroy diversity, that is, the [substitute] trustee and [] MERS . . . there is just no basis in the law of this circuit on which you can have any claim against those entities and, therefore, that their joinder in this case is fraudulent.

Tr. at 2:15–25 (docket no. 15); *see also* Order at docket no. 14 (denying plaintiffs' motion to remand). Judge Brinkema further recognized that "it's the lenders who are the true parties in

---

[7] Plaintiff alleges that the Assignment is void for the additional reason that it was executed by Ms. Simmons who, as an employee of PFC, could not execute the Assignment to BAC on MERS's behalf as an "assistant secretary" of MERS. According to Plaintiff, the impropriety of Ms. Simmons "wearing multiple hats" invalidates the Assignment. MERS's system in this regard was examined recently in great detail:

> Upon request by a member, MERS furnishes a formal corporate resolution designating one or more of the member's employees, chosen by the member, as "certifying officers" of MERS. That is, MERS authorizes employees of the note holder or, more commonly, the note holder's servicing agent to execute assignments on MERS's behalf. These employees are deputized at their own election as either "vice presidents" or "assistant secretaries" of MERS, and the actions that they may take as MERS's agents are enumerated in the corporate resolution.

*Culhane v. Aurora Loan Servs. of Nebraska*, --- F. Supp. 2d ---, No. 11-11098, 2011 WL 5925525, at *17 (D. Mass. Nov. 28, 2011) (citations omitted). Like the court in *Culhane*, I am troubled by this evidently rampant practice, which poses rather obvious potential for conflicts of interest and represents "the thinnest possible veneer of formality and legality . . . ." *Id.* at *18. Nevertheless, Plaintiff cites no authority for the proposition that this system of deputizing employees of other institutions within the mortgage industry to make assignments on MERS's behalf invalidates such assignments. To the contrary, there have been decisions finding assignments valid in spite of the practice. *See, e.g.*, *James v. ReconTrust Co.*, No. 11-CV-324, 2011 WL 3841558, at *12 (D. Or. Aug. 26, 2011) (magistrate judge finding that signatory of an assignment from MERS to BAC as well as an appointment of successor trustee on behalf of BAC could wear both hats and that doing so was "insufficient to prove that she lacked authority to sign either or both documents"); *Aliberti v. GMAC Mortgage, LLC*, 779 F. Supp. 2d 242, 249 (D. Mass. 2011) (upholding assignment executed by "vice president" of MERS who was employed by the entity to which MERS's rights were assigned). Moreover, despite Plaintiff's contentions, neither MERS nor BAC has represented that it wishes not to be bound by the assignment, which, I point out, was executed before a notary public. In other words, regardless of where Ms. Simmons was technically employed, and irrespective of her likely tenuous connection to MERS, it seems clear that MERS intended to allow her to assign its rights to BAC and intended to be bound by such. Indeed, although I decline to decide the issue, it is probably the case that Plaintiff lacks standing to attack the assignment in this particular way.

interest and not MERS. MERS is just a pass-through . . . ." Tr. at 3:18–19. Additionally, in support of her finding that MERS and the substitute trustee had been fraudulently joined, Judge Brinkema observed that if the plaintiff's claims were found to have any merit, complete relief would be available against the remaining defendants (which included BAC). *Id.* at 11:12–14. Ultimately, I agree with Judge Brinkema; MERS is merely a pass-through against which Plaintiff cannot obtain the relief he seeks in the first count of his complaint.

### B. PFC is a Fraudulently Joined Defendant

All of the claims contained within Plaintiff's complaint—for quiet title, breach of fiduciary duty, and wrongful foreclosure—are asserted against PFC. In Count I, Plaintiff claims that PFC has contributed to the alleged cloud on his title because the Appointment of Substitute Trustees under which PFC was given the powers of a trustee is void for not complying with the deed of trust. Accordingly, Plaintiff seeks an order striking the Appointment of Substitute Trustees. However, an action for quiet title against PFC cannot lie. As previously mentioned, the central purpose of a quiet title action is to resolve competing claims of ownership. And yet PFC, like MERS, could not possibly assert any right to the subject property's title. After all, the foreclosure sale has already occurred and title has been conveyed to Fannie Mae via a trustee's deed. As Defendants aptly point out, PFC no longer has any connection to the property.

Aside from the foregoing reason, however, I find that Plaintiff could not possibly prevail against PFC in his quiet title action because he has failed to plead sufficient facts to demonstrate that the Appointment of Substitute Trustees in this case was invalid. As previously discussed, MERS assigned its interest in the deed of trust to BAC, including its right to appoint substitute trustees. Therefore, BAC had authority to appoint PFC as substitute trustee. This outcome is consistent with the results reached by other courts considering this particular issue with regard to

deeds of trust containing identical or nearly identical language. *See, e.g.*, *Ramirez-Alvarez v. Aurora Loan Servs., LLC*, No. 1:09-cv-1306, 2010 WL 2934473, at *3 (E.D. Va. July 21, 2010) (noting that in signing the deed of trust, plaintiff "agreed that MERS, filling the dual roles of beneficiary and nominee for the lender, had the right to foreclose on the property and take any action required of the lender, such as the appointment of substitute trustees"); *Larota-Florez*, 719 F. Supp. 2d at 639–40 (finding that MERS's assignee had authority to appoint PFC as trustee to sell the property at a foreclosure sale); *Ruiz v. Samuel I. White, P.C.*, No. 1:09-cv-688, 2009 WL 4823933, at *1 (E.D. Va. Dec. 11, 2009) (dismissing a count pled against MERS because "a review of the deed of trust makes clear that MERS had the authority to appoint successor trustees"). In the instant case, once MERS assigned its interest in the deed of trust to BAC, BAC acquired the power formerly held by MERS to serve as beneficiary under the deed of trust, which entailed the subsequent right to appoint PFC as substitute trustee on behalf of the secured party. *See* Va. Code § 55-59(9) ("The party secured by the deed of trust, or the holders of greater than fifty percent of the monetary obligations secured thereby, shall have the right and power to appoint a substitute trustee or trustees for any reason . . . .").

In Count II, Plaintiff alleges that PFC breached its fiduciary duty by appointing itself as substitute trustee, participating in the assignment of MERS's rights under the deed of trust to BAC, initiating foreclosure proceedings, and selling Plaintiff's property. It is true that a trustee like PFC is "the agent of both debtor and creditor." *Powell v. Adams*, 179 Va. 170, 174, 18 S.E.2d 261, 263 (1942). Accordingly, "[i]t is incumbent upon [the trustee] to act toward each with perfect fairness and impartiality." *Id.* Extrapolating from this duty of fairness and impartiality, Plaintiff argues that trustees are fiduciaries for both the debtor and creditor. In support of this notion, Plaintiff cites *Rohrer v. Strickland*, 116 Va. 755, 759, 82 S.E. 711, 712

13

(1914) (citing *Wilson v. Wall*, 99 Va. 353, 353, 38 S.E. 181, 181 (1901)). However, neither *Rohrer* nor *Wilson* mentions fiduciary duties. Moreover, Plaintiff has cited no additional authority for his assertion that there is a common law fiduciary duty owed to borrowers by trustees. In fact, under Virginia law, "'[t]he powers and duties of a trustee in a deed of trust, given to secure the payment of a debt, are limited and defined by the instrument under which he acts.'" *Warner v. Clementson*, 254 Va. 356, 361, 492 S.E.2d 655, 657 (1997) (quoting *Powell*, 179 Va. at 174, 18 S.E.2d at 263); *see also Horvath v. Bank of New York, N.A.*, No. 1:09-cv-01129, 2010 WL 538039, at *1 (E.D. Va. Jan. 29, 2010), *aff'd*, 641 F.3d 617 (4th Cir. 2011) ("Under Virginia law, however, a trustee under a deed of trust has no such duty of diligence, and trustees only owe duties listed in the deed of trust."); *Carter v. Countrywide Home Loans, Inc.*, No. 3:07CV651, 2008 WL 4167931, at *11 (E.D. Va. Sept. 3, 2008) (dismissing claim for breach of fiduciary duty against trustee because plaintiffs' "claim fail[ed] to set forth any fiduciary duties arising pursuant to the deed of trust"); *Preston v. Johnson*, 105 Va. 238, 238, 53 S.E. 1, 1 (1906) (stating that it is well-settled that a trustee, in executing a trust, "must in all material particulars substantially conform to the stipulations of the deed"); *Fleet Fin. v. Burke & Herbert Bank and Trust*, No. 122305, 1992 WL 884461, at *3 (Va. Cir. Ct. Jan. 28, 1992) ("The Court finds on this issue that Virginia law does not impose fiduciary duties on trustees beyond those duties owed to the parties under the deed of trust.").

In the case at hand, the deed of trust spells out the powers and duties of the trustee with respect to the sale of the property following the initiation of foreclosure. There is no duty (labeled fiduciary or otherwise) found in the deed of trust requiring the trustee to ensure either that it was properly appointed or that the entity invoking the sale is the secured party with authority to foreclose. For these reasons, I find that Plaintiff could not prevail against PFC on

Count II. *See Morgan v. Chase Home Fin., LLC*, 306 F. App'x 49, 53 (5th Cir. 2008) (finding in-state trustee was fraudulently joined by plaintiff who could not establish a cause of action against trustee for breach of fiduciary duty in home foreclosure case).

Finally, in Count III, Plaintiff attempts to make out a claim for wrongful foreclosure against PFC in which he seeks rescission of the foreclosure sale and damages. Notwithstanding the fact that it is unclear whether Virginia even recognizes the tort of "wrongful foreclosure," *see Marabda v. Albanese & Assocs.*, No. 143243, 1996 WL 1065652, at *3 (Va. Cir. Ct. Dec. 6, 1996) ("Assuming, without deciding, that Virginia law recognizes a tort of wrongful foreclosure . . . ."), I find that because Count III merely recites many of the same allegations against PFC that I have already addressed, it also fails to demonstrate any reasonable basis for recovery against PFC. To the extent that Plaintiff alleges in Count III that PFC breached a duty by failing to confirm whether BAC had authority to direct it to initiate foreclosure, that assertion has been analyzed and found lacking. And to the extent that Plaintiff alleges in Count III that PFC wrongfully foreclosed because it appointed itself as substitute trustee, that argument too has essentially been refuted.[8]

Beyond these allegations, Plaintiff insists that PFC unlawfully advertised the subject property for sale at foreclosure, unlawfully auctioned it off, and unlawfully retained a commission for doing so. In Virginia, in the event of default in the payment of the debt secured, "at the request of any beneficiary the trustee shall forthwith declare all the debts and obligations

---

[8] Plaintiff makes a similar argument for the invalidity of the Appointment of Substitute Trustees as he does for the invalidity of the Assignment: that they must be void because the signatory of both, Ms. Simmons, was "wearing multiple hats." With respect to the Appointment of Substitute Trustees, Plaintiff argues that PFC effectively appointed itself because Ms. Simmons, who signed the document as "Attorney-in-Fact" for BAC was, according to Plaintiff, an employee of PFC. Again, as more thoroughly set forth in the preceding footnote, the fact that Ms. Simmons may have been employed by PFC does not, in itself, imply that she lacked authority to serve as an agent of BAC (or, for that matter, MERS). Further, as is the case for the Assignment from MERS to BAC, there has been no allegation by Plaintiff that BAC did not intend to effect this appointment via Ms. Simmons or be bound by it. Indeed, though I decline to delve into the issue, it is probably the case that Plaintiff lacks standing to even make this argument given the fact that he was neither a party to the appointment nor an intended beneficiary of it.

secured by the deed of trust at once due and payable and may take possession of the property and proceed to sell the same at auction . . . ." Va. Code § 55-59(7). The Virginia Code goes on to prescribe how a trustee is to go about conducting such an advertisement and sale, *see* Va. Code § 55-59.1, *et seq.*, and yet in his complaint, Plaintiff fails to identify any deficiencies in the way PFC went about performing these tasks (or others). Beyond the conclusory assertion that the advertisement of the foreclosure sale and the subsequent auction were "unlawful," the complaint is completely devoid of any factual allegations that would support a claim against PFC. Under the deed of trust, "MERS (as nominee for Lender *and Lender's successor's and assigns*) has the right . . . *to foreclose and sell the Property*." (Emphasis added). Ultimately, as assignee of MERS's rights under the deed of trust, BAC had authority to appoint PFC and direct it to initiate foreclosure proceedings on the subject property upon Plaintiff's default.[9]

      Because there is no reasonable basis to predict that Plaintiff can prevail in state court against PFC on any of the three counts, PFC must also be dismissed as a defendant and its citizenship must accordingly be disregarded for diversity purposes. *See Wygal v. Litton Loan Serv. LP*, 5:09-cv-00322, 2009 WL 2524701, at *5 (S.D.W. Va. Aug. 18, 2009) (holding that plaintiff's naming of an in-state trustee as a defendant in an action challenging a creditor's authority to foreclose does not defeat diversity jurisdiction and constitutes fraudulent joinder

---

[9] Plaintiff argues that an "agent" of the secured party, beneficiary, or noteholder cannot appoint a substitute trustee. It is true that the language in the Virginia Code does not explicitly provide for such. *See* Va. Code § 55-59(7) (giving "any beneficiary" the right to request that a trustee initiate foreclosure proceedings in the event of a borrower's default); § 55-59(9) (declaring that "[t]he party secured by the deed of trust, or the holders of greater than fifty percent of the monetary obligations secured thereby, shall have the right and power to appoint a substitute trustee . . ."). However, courts have not read this language to mean that *only* the secured party or noteholder itself may appoint a substitute trustee, and have instead upheld the right of loan servicing entities, acting as agents, to do so. *See, e.g.*, *Larota-Florez v. Goldman Sachs Mortgage Co.*, 719 F. Supp. 2d 636, 641 (E.D. Va. 2010), *aff'd*, 2011 WL 3203047 (4th Cir. July 28, 2011) (finding that loan servicer "has the right to collect payments on behalf of the holder and the right to foreclose upon default. Therefore, [loan servicer]'s appointment of [PFC] as substitute trustee under the Deed of Trust was authorized as a matter of contract and agency law").

where there is no possibility of recovery against the trustee).[10]

### C. Effect of MERS and PFC Not Joining Defendants' Notice of Removal

In a brief footnote at the end of his motion to remand, Plaintiff argues that even if the parties are found to be completely diverse, remand is still necessary because MERS and PFC did not file their own notices of removal or affirmatively join the notice of removal filed by Bank of America (formerly BAC) and Fannie Mae. In support of this argument, Plaintiff cites *Payne v. Brake*, No. Civ.A. 305CV00052, 2006 WL 197110 (W.D. Va. Jan. 24, 2006). In that case, I granted the plaintiff's motion to remand, in effect because not all of the defendants had joined in the case's removal. *Id.* at *1.

As a general matter, unless the time limitation set forth in 28 U.S.C. § 1446(b) has been waived, it is true that all defendants must timely file a notice of removal from state court or join in a notice of removal filed by a co-defendant. *See id.* However, "fraudulently joined defendants are not required to consent to a co-defendant's notice of removal." *Shaffer v. Nw. Mut. Life Ins. Co.*, 394 F. Supp. 2d 814, 819 (N.D.W. Va. 2005); *see also McKinney v. Rodney C. Hunt Co.*, 464 F. Supp. 59, 62 (W.D.N.C. 1978) ("A caveat to the general rule [of unanimous consent to removal] is that nominal or formal parties . . . and defendants fraudulently joined may be disregarded . . . ."). Therefore, *Payne* is inapposite because the doctrines of fraudulent joinder and nominal parties were not considered in that case. Despite the fact that MERS and PFC did not file their own notices of removal or join the one filed by Bank of America (formerly BAC) and Fannie Mae, remand is not necessitated because unanimous consent is not required for

---

[10] As previously mentioned, Bank of America and Fannie Mae also argue in their notice of removal and brief in opposition to Plaintiff's motion to remand that the citizenship of MERS and PFC can be ignored for the alternative reason that they are nominal parties. When a district court is conducting an inquiry into diversity jurisdiction, "nominal" or "formal" parties that have been joined are to be disregarded and only "real parties to the controversy" are considered relevant. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460–61 (1980). However, in this case, I decline to decide whether MERS and PFC are nominal parties. Indeed, such an analysis is unnecessary; because MERS and PFC have been fraudulently joined, they must be dismissed, and their citizenship must be ignored for the purposes of determining whether the Court has diversity jurisdiction over this action.

parties believed to be fraudulently joined or nominal.

### D. Jurisdiction is Proper

Because Defendants have met their burden of demonstrating that MERS and PFC are fraudulently joined parties, the citizenship of those two entities must be disregarded. The parties that remain are completely diverse: Plaintiff is a citizen of Virginia, Bank of America (formerly BAC) is a citizen of North Carolina, and Fannie Mae is a citizen of the District of Columbia. Further, as previously mentioned, there is no dispute that the amount in controversy requirement has been satisfied with respect to the remaining parties. Therefore, the requirements of 28 U.S.C. § 1332 have been satisfied and removal of the case from state court was proper.

### IV. Conclusion

For the reasons stated herein, Plaintiff's motion to remand shall be denied. Mortgage Electronic Registration Systems, Inc. and Professional Foreclosure Corporation of Virginia shall be dismissed as Defendants in this action.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this __24th__ day of January, 2012.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE